# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

UNITED STATES OF AMERICA    :
            :
      v.           :      CASE NO.: CR207-067
            :
ROY ANTHONY PRUITT      :

## O R D E R

Defendant Roy Anthony Pruitt ("Pruitt"), who is currently incarcerated at the Federal Correctional Institution Victorville in Adelanto, California, pled guilty in this Court to the charged offense of bank robbery, in violation of 18 U.S.C. § 2113(a). On January 27, 2009, the Honorable Anthony A. Alaimo sentenced Pruitt to 78 months' imprisonment, and judgment was imposed on January 28, 2009. (Doc. Nos. 50, 52). Pruitt filed an appeal, and the Eleventh Circuit affirmed Pruitt's conviction and sentence by order dated September 9, 2009, which was issued as a mandate on December 3, 2009. (Doc. No. 74). Pruitt filed a motion to vacate, correct, or set aside his conviction and/or sentence, and United States Magistrate Judge James E. Graham recommended that Pruitt's motion be dismissed as time barred. (Doc. No. 89). The undersigned adopted this recommendation as the opinion of the Court over Pruitt's objections. (Doc. No. 92). The undersigned denied Pruitt's motion for reconsideration of the dismissal of his § 2255 motion. (Doc. No. 102).

Pruitt has filed a Motion for Clarification. (Doc. No. 99). In this Motion, Pruitt contends that the transcript from his sentencing hearing contains confusing statements on the part of Judge

1

Alaimo.  For example, Pruitt contends that Judge Alaimo agreed with the Assistant United States Attorney that Pruitt's federal sentence began on the date he was sentenced in this Court.  Pruitt also contends that his attorney stated that he expected Pruitt's state sentence to expire while he was in federal custody.  Pruitt further contends that Judge Alaimo stated his intention to request that the Bureau of Prisons ("BOP") make his federal sentence run concurrently with his state sentence.  Pruitt asserts that it was Judge Alaimo's intention that his federal sentence run concurrently with his state sentence.

The Government's response to this Motion states that Pruitt's claim fell under the purview of 28 U.S.C. § 2241, which requires a petitioner to exhaust his administrative remedies prior to filing a cause of action in federal court.  The Government also stated that a decision that a federal sentence is to run concurrently with a state sentence is left to the BOP.

Pruitt also filed a Motion to Correct Clerical Error Pursuant to Federal Rule of Criminal Procedure 36.  Pruitt's assertions in this Motion are essentially the same as those he set forth in his Motion for Clarification.  Pruitt contends that Judge Alaimo "clearly and concisely state[d]" during the sentencing proceedings that Pruitt's federal sentence was to begin on January 27, 2009, (doc. no. 112, p. 2), yet the Clerk of Court failed to include this instruction in the written judgment or that Pruitt's federal sentence was to run concurrently with his state sentence.  Pruitt avers that Judge Alaimo's oral pronouncement of sentence controls, which necessitates the correction of the contrary written judgment.

The Government responded to Pruitt's Rule 36 Motion.  The Government asserts that Rule 36 motions are designed to cover minor, uncontroversial errors, not to make a substantive alteration to a criminal sentence, which is what Pruitt asks this Court to do.  The Government

alleges that Judge Alaimo did not orally order that Pruitt's federal sentence should run concurrently with his state sentence.  Rather, the Government asserts, Judge Alaimo only requested that the BOP grant Pruitt credit beginning on the date of his arrest on federal charges and did not order this to occur, as Judge Alaimo recognized that the BOP is the entity with the authority to do so.  The Government avers that there is no clerical error to correct.  Pruitt filed a Reply.

Pruitt filed a Notice and Request for Expedited Ruling on his Rule 36 Motion, which was docketed as his Second Motion to Correct Clerical Error.  Plaintiff also filed a Request for Submission of his Rule 36 Motion to the undersigned.  The Government responded to Pruitt's Request.

## DISCUSSION AND CITATION TO AUTHORITY

**I.      Section 2241**

**A.      Exhaustion**

Federal courts must "look behind the label" of an inmate's pro se motion and determine whether there is any framework under which his claim might be cognizable. United States v. Jordan. 915 F.2d 622, 624–25 (11th Cir.1990). If a federal prisoner wants to challenge the execution of his sentence, rather than its validity, he may do so through a 28 U.S.C. § 2241 petition. Antonelli v. Warden, United States Penitentiary Atlanta, 542 F.3d 1348, 1352 (11th Cir.2008).  A review of Pruitt's Motion for Clarification reveals that he seeks relief pursuant to 28 U.S.C. § 2241.

"[P]risoners seeking habeas relief, including relief pursuant to [28 U.S.C.] § 2241," must exhaust all available administrative remedies.  Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir.

2004).  If a petitioner fails to exhaust his administrative remedies before seeking redress in the federal courts, the court should dismiss the case for want of jurisdiction.  Winck v. England, 327 F.3d 1296, 1300 n.1 (11th Cir. 2003) (citing Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992)).  "Also jurisdictional is '[t]he general rule . . . that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.'"  Id. (quoting Boz v. United States, 248 F.3d 1299, 1300 (11th Cir. 2001)).

In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  534 U.S. 516, 523 (2002).  The Supreme Court has noted exhaustion must be "proper."  Woodford v. Ngo, 548 U .S. 81, 92 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.[1]  In other words, an institution's requirements define what is considered exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Inmates in BOP facilities must exhaust the BOP administrative remedies, as required by the Code of Federal Regulations, beginning the grievance process locally by presenting their complaint for informal resolution. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgencio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

inmate may seek formal review locally by filing a written administrative remedy request with the Warden at his institution. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15. If the inmate is not satisfied with the Regional Director's response, the inmate may make a final appeal to the Office of the General Counsel. Id.

There is nothing before the Court which indicates Pruitt initiated, much less completed, the administrative remedies process before he filed his Motion for Clarification. As noted above, the requested relief in this Motion falls within the purview of section 2241. Accordingly, Pruitt was required to exhaust his administrative remedies prior to filing this Motion. Pruitt failed to do so, and this Court lacks jurisdiction to entertain his requested relief. In addition, once Pruitt exhausts his administrative remedies, the district of his conviction is the proper venue in which to file his section 2241 motion. 28 U.S.C. § 2242; Rumsfeld v. Padilla, 542 U.S. 426, 442–43 (2004) (noting that a § 2241 petition must be filed in the district of the prisoner's confinement).


**B.** *Nunc pro tunc* **designation**

The BOP shall designate the place of a prisoner's imprisonment. 18 U.S.C. § 3621(b). The BOP, in its "sound discretion", can "designate a state prison as a place of federal confinement *nunc pro tunc*." Roman v. Nash, 184 F. App'x 277, 279 (3d Cir. 2006) (citing Barden v. Keohane, 921 F. 2d 476, 481 (3d Cir. 1991)). In making this determination, the BOP must consider: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence--(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as

appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b). "If a defendant is already serving a state sentence, this '*nunc pro tunc*' designation has the effect of starting the federal sentence while the defendant is in state custody and running the federal and state sentences concurrently." Id. The Eleventh Circuit determined that "the word concurrent . . . does not mean that the two sentences hav[e] the same starting date because a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006) (alteration in original) (internal citation and punctuation omitted). Once an inmate requests *nunc pro tunc* relief with the BOP, the BOP looks to the judgment and commitment order. Program Statement 1560.05, ¶ 9(b)(1). If the order is silent as to concurrence, the BOP "will send a letter to the sentencing court . . . inquiring whether the court has any objections[ ]" to the prisoner's *nunc pro tunc* request. Id. at ¶ 9(b)(4)(c).

The undersigned notes that Pruitt filed a document with a staff member of the BOP requesting copies of his sentence computation sheet and information from his central file showing the date of his arrest by federal authorities. Pruitt was informed that he should write to this Court "for clarification as to whether his sentence was supposed to [con]current with the state sentence/order jail credit from time of arrest in 2007 because the court minutes are not clear to their intention (sic) and currently his J&C is silent to that intent making it consecutive." (Doc. No. 99-1, p. 1). Pruitt did not request *nunc pro tunc* relief pursuant to this document, as he claims that his state sentence was used to enhance his federal sentence. (Id.). Even if he had made this request, Pruitt is not entitled to his requested relief. Pruitt is well aware that the written judgment in his case does not indicate that his federal sentence was to run concurrently

with his state sentence. (Doc. No. 52). Contrary to Pruitt's assertions, however, Judge Alaimo did not orally pronounce during sentencing that Pruitt's federal sentence was to run concurrently with his state sentence. Instead, Judge Alaimo informed Pruitt and his counsel that the receipt of credit for time served is a "matter of law [which he did] not have any control over what that is." (Doc. No. 65, pp. 52–53). The United States Probation Officer Scot Riggs noted that Pruitt was serving a state sentence, which took precedence over the federal sentence because the federal sentence was imposed after the state sentence, to which Judge Alaimo agreed. (Id. at p. 53). Judge Alaimo concluded by stating that the Court would make a request of the BOP as to whether Pruitt's federal sentence would relate back to his 2007 arrest on federal charges. (Id.).

It is evident that Judge Alaimo made no oral pronouncement that Pruitt's federal sentence would run concurrently with his state sentence. The only statement Judge Alaimo made was that the Court would make an inquiry with the BOP as to the commencement of Pruitt's federal sentence. Even if this Court had jurisdiction to entertain the merits of Pruitt's claim, he is not entitled to his requested relief.

III.    **Rule 36**

"After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." FED. R. CRIM. P. 36. "Rule 36 may not be used 'to make a substantive alteration to a criminal sentence.'" United States v. Portillo, 363 F.3d 1161, 1164 (11th Cir. 2004) (quoting United States v. Pease, 331 F.3d 809, 816 (11th Cir. 2003) (holding that the district court erred when it used Rule 36 to amend the defendant's sentence to include an order of forfeiture that had been agreed to in the plea agreement, but which the court failed to

make a part of its judgment at sentencing)(citing to <u>United States v. Whittington</u>, 918 F.2d 149, 151 (11th Cir. 1990) (holding that Rule 36 may not be used by the district court to fundamentally alter the defendant's sentence from three to five years imprisonment in an attempt to conform the sentence to the intention of the parties as reflected in the plea agreement, which provided that the prisoner would serve exactly five years); <u>United States v. Werber</u>, 51 F.3d 342, 347 (2d Cir.1995) (finding that "Rule 36 covers only minor, uncontroversial errors" and that a district court has no jurisdiction to correct a defendant's sentence where the corrections are aimed at remedying errors of law rather than mere transcription)).  "However, a district court may correct 'clerical' errors in the written judgment at any time under Rule 36, for example, to ensure that the judgment is in accord with the oral sentence."  <u>Id.</u> (citation omitted).  "Where a sentence that is pronounced orally and unambiguously conflicts with the written order of judgment, the oral pronouncement controls."  <u>Id.</u> at 1165 (citing <u>United States v. Ridgeway</u>, 319 F.3d 1313, 1315 (11th Cir. 2003)).

As noted above, Judge Alaimo did not orally pronounce that Pruitt's federal sentence was to run concurrently with his state sentence.  Thus, there is no clerical error in the written judgment to correct.  Additionally, the relief Pruitt seeks is a substantive alteration, which is beyond the reach of Rule 36.  <u>United States v. Schery</u>, 323 F. App'x 767, 768 (11th Cir. 2009) (noting that Rule 36 "ensures that the judgment is in accord with the court's unambiguous oral sentence[,]" "covers minor, uncontroversial errors[,]" and "may not be used to modify a sentence in a substantive way.") (internal citations and punctuation omitted).  In short, Pruitt is not entitled to his requested relief.

## <u>CONCLUSION</u>

Pruitt's Motions (doc. nos. 99, 112, 117, 119) are **DENIED**.


**SO ORDERED**, this 28th day of July, 2014.


_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA